IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN Y.,[1]                                        No.  1:23-cv-00319

          Plaintiff,                             OPINION & ORDER

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

Katherine L. Eitenmiller
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, Oregon 97401

     Attorney for Plaintiff

Natalie K. Wight
Assistant United States Attorney
District of Oregon
Kevin Danielson
Executive Assistant U.S. Attorney

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1000 SW Third Avenue, Suite 600
Portland, OR 97204

Joseph J. Langkamer
Social Security Administration
Office of the General Counsel
6401 Security Blvd.
Baltimore, MD 21235

        Attorneys for Defendant


HERNÁNDEZ, District Judge:

        Plaintiff Bryan Y. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further

administrative proceedings.

## PROCEDURAL BACKGROUND

        Plaintiff applied for DIB and SSI on February 24, 2020, alleging an onset date of March

1, 2012. Tr. 259, 263.[2] Plaintiff's date last insured ("DLI") was September 30, 2018. Tr. 23. His

applications were denied initially and on reconsideration. Tr. 21.

        On October 28, 2021, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 44. On March 15, 2022, the ALJ found Plaintiff not

disabled. Tr. 37.  The Appeals Council denied review. Tr. 1.

/ / / / / /

/ / / / / /

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 10.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on bipolar disorder, depression, learning disability, inability to read and comprehend, right shoulder injury, sleep issues, back problems, HBP, and COPD. Tr. 306. At the time of his alleged onset date, he was 41 years old. Tr. 78. He has a high school education and has past relevant work experience as a rig worker. Tr. 35–36, 307.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after his alleged onset date and through his date last insured. Tr. 23. Next, at steps two

and three, the ALJ determined that Plaintiff has the following severe impairments: "coronary

artery disease, right shoulder repair, anxiety disorder, persistent depressive disorder, history of

cannabis and opioid dependence with recent remission, chronic obstructive pulmonary disease,

and learning disorders in reading, writing, and math per claimant report." Tr. 24. However, the

ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a

listed impairment. Tr. 24–28. At step four, the ALJ concluded that Plaintiff has the residual

functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)

with the following limitations:

> [T]he claimant can occasionally climb ladders, ropes, and scaffolds and
> occasionally crawl; can occasionally overhead reach with the right arm; should

avoid concentrated exposure to pulmonary irritants; would be capable of occasional interaction with the public and coworkers; can persist at simple, routine, repetitive tasks; can make simple work-related decisions; and the claimant can perform work with few, if any, changes in the workplace, but no assembly-line pace work.

Tr. 28. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 35–36. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as marker, routing clerk, and router. Tr. 36–37. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 37.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

/ / / / / /

/ / / / / /

## DISCUSSION

### I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195 (9th Cir. 2001); see also Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that he is right-handed, that he stopped volunteering at the mission as their morning cook four months before his trial date, and that he is currently

engaged in substance abuse treatment. Tr. 51–53. He also stated that four years ago he worked as a well driller, working 12-hour days, that while he received a regular high school diploma he was in special education classes for both reading and math and graduated with a zero grade point average. Tr. 54–55. When questioned about his efforts to apply for work, Plaintiff stated that due to his age, felony status, and difficulty using a computer, he has not been successful. Tr. 58. He added that he has not looked in the past two years because he was told not to look while applying for social security. Tr. 58–59. Plaintiff did clarify that he tried looking for work after his alleged onset date of March 2012, and was briefly successful in working for ORCAL as a firefighter until he had a hernia and his COPD worsened. Tr. 59.

When asked about his physical symptoms, Plaintiff testified that he has bad back and shoulder pain, and that the shoulder surgery he received in 2020 still resulted in pain and limitations. Tr. 59–60. He explained that he experiences pain when reaching and from normal use. Tr. 60. Regarding his opioid addiction, Plaintiff stated that he has been in a cycle of opioid use and sobriety since at least 2010. Tr. 61–63. He added that when he was completely clean, he could not function, but he can now because he is "on the right psych meds and everything." Tr. 63. However, he also clarified that his opioid addiction did not interfere with his ability to work as a rig worker for several years, and that he only lost his job there because he was laid off. Tr. 63–64. He went on to state that when he was no longer using substances, his anxiety got worse. Tr. 66. He stated that he has "tried looking for work for years now and it's just I'm not getting hired anywhere." Tr. 66. When asked more specific questions about his mental health and how it has changed, Plaintiff stated that he did not know how it had changed only that his anxiety was worse, he was experiencing panic attacks, including one during the hearing, and that he has difficulty reading and understanding, including not having a full understanding of the questions

being asked at his hearing. Tr. 67–69. He was able to clarify that he experiences anxiety when there are many things happening at once with a lot of people around, which causes him to lose focus. Tr. 69. He also stated that he could probably "dig a hole all day long, I think, if I took my time, but that he is not good with people. Tr. 69.

In his function report, he noted that he walks a lot, that pain and anxiety affect his sleep, he has no difficulties with personal care, does not need help remembering to take care of his personal care or medications, and that he has some difficulty getting dressed because of recent shoulder surgery. Tr. 324–26. He also noted that he has difficulties with reading and comprehension, that he can only pay attention for 10 minutes at a time, and that he needs to stop and rest for up to half an hour after walking for half an hour. Tr. 328. He also cannot handle stress or changes in routine, wears an arm brace because of his right shoulder surgery in February 2020, and he currently takes no medication. Tr. 329.

Plaintiff challenges the ALJ's rejection of his subject symptom testimony by failing to identify specific, clear and convincing reasons supported by substantial evidence. Pl. Br. at 11. The ALJ discounted Plaintiff's symptom testimony because of: (1) his daily activities; (2) inconsistencies with the objective medical evidence; and (3) his mental health improved with treatment.

### A. Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that the alleged severity of symptoms was inconsistent with Plaintiff's reported activities of daily living. Specifically, the ALJ identified Plaintiff's statements that he volunteered as a morning cook for two hours a day six days a week. Tr. 33.

The ALJ's finding is not supported by substantial evidence. The ALJ does not explain how Plaintiff's ability to work consistently for two hours a day is transferrable to working for eight hours a day. Plaintiff explained that his main inability to work came from his anxiety due to being around other people when there are too many things going on at once, causing his inability to focus, and that he was able to volunteer for the morning shift because there were few people around. Tr. 54, 69. Given Plaintiff's explanation, and the ALJ's lack thereof, his volunteer activity is not a clear and convincing reason for discounting his subjective symptom testimony.

### B.  Improved With Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining

eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ found that Plaintiff's testimony was inconsistent with his reports of improving with treatment. Tr. 29–33. The ALJ found that Plaintiff's treatment, such as hernia and shoulder surgery, as well as physical therapy resulting in improvement to his shoulder, Plaintiff's reports of little to no pain, and Plaintiff's unremarkable physical examination results were indications that his back and shoulder pain were not as disabling as alleged. Tr. 29–33. For Plaintiff's mental health, the ALJ noted that Plaintiff had mostly normal mental status examinations, and that he improved with medication and treatment. Tr. 31–33. Taken together, the ALJ concluded that these results did not support Plaintiff's disabling testimony. Tr. 33–34.

The ALJ's reasoning is supported by substantial evidence. Plaintiff complained of back pain due to a hernia approximately four years ago, and of shoulder pain that resulted in recent surgery that still left him with pain. Tr. 53, 59–60. Plaintiff also noted that he has dealt with the pain in his back and shoulders for a long time and that he runs out of breath "quite a bit because of my smoking." Tr. 59–60. Plaintiff's records, however, show that his pain has largely resolved. In July 2015, Plaintiff had some umbilical hernia expanding, and in December 2015, he received a referral for surgery for supraumbilical hernia repair and had some worsening in his superior periumbilical hernia. Tr. 486–87, 491. A January 2017 follow-up appointment showed the surgery resolved Plaintiff's back pain while his physical examination showed no shortness of breath or chest pain, that his breathing was unlabored, and his neurologic results were grossly

normal. Tr. 483–84. Plaintiff did not complain again about back pain until July 2019, where he reported that his hernia had been bothering him. Tr. 471. Three months later, in October, Plaintiff was seen for a right shoulder injury with moderate joint edema, limited range of motion, and tenderness due to a possible rotator cuff tear, and had unremarkable physical exam results related to his back and spine. Tr. 467–69. Plaintiff underwent rotator cuff repair surgery sometime in December 2019, as noted in physical evaluation from February 19, 2020, which showed he was eight weeks post-op, that he had reduced range of motion, muscle weakness, and pain, that his therapy would be low complexity, that he was in minimal pain, and that he was otherwise unremarkable. Tr. 540–43. In March 2020, Plaintiff reported his pain had improved dramatically and he was no longer taking pain medication. Tr. 756. A year later, in March 2021, while he complained of worsening mental health and shortness of breath, he denied any physical pain and was unremarkable upon physical examination. Tr. 1062–64. From April to September, Plaintiff had unremarkable physical exams, though he complained of worsening COPD while continuing to smoke. Tr. 1079, 1083, 1125.

When it comes to Plaintiff's mental health, he received intermittent and inconsistent treatment over the years, starting in 2012. Plaintiff was receiving mental health treatment as part of his substance abuse treatment, and, in December 2012, he reported that his anxiety was getting better on Paxil, that he was having an easier time opening up in group therapy, and that he was even helping lead some of the groups. Tr. 453. In March 2013, Plaintiff relapsed by smoking marijuana and requested an increase in Paxil due to worsening anxiety. Tr. 501. In January 2017, Plaintiff was no longer taking medication for his mental health, but was noted to have anxiety, an anxious appearance, and a fidgeting mood and affect. Tr. 484–85. In October 2019, Plaintiff was assessed with anxiety, sleep issues, trouble with concentration and focus, and depression, yet he

was appropriately dressed, had normal thought processes and associations, was oriented to time and place, had unimpaired recent and remote memory, and was focused and attentive. Tr. 732–33. He also had poor judgment and insight, was guarded and irritable, and was restless and on edge. Tr. 733. In March 2020, he reported being more anxious than normal, that he was depressed but with normal mood and affect, and that he would like counseling. Tr. 768, 770. In June, he received an initial mental health assessment where he stated he had been pretty good for the last two weeks, that he had sleep issues, was tired during the day, was bored and not motivated, and that he had anxiety when around people. Tr. 1040. In August, Plaintiff had a follow-up appointment where he reported doing "OK" on his current Paxil medication, though he had previously taken a higher dosage. Tr. 1044. He also reported that he felt his anxiety was worse since quitting marijuana, that he reported depression as 5/10, that hydroxyzine was helping with both sleep and anxiety, and that coffee was helping with his energy levels and focus. Tr. 1044. In January 2021, Plaintiff reported his medications were helping with depression and anxiety, and that his sleep was better. Tr. 1050.

Given the above, the ALJ's reasoning regarding Plaintiff's improvement with treatment was a clear and convincing reason to discount his subjective symptom testimony supported by substantial evidence.

### C.  Lack of Support from Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874

(9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation conflicted with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

As noted above, Plaintiff complained of a combination of physical and mental health impairments that prevented him from working, including anxiety, depression, back and shoulder pain, and lack of focus. The ALJ noted such medical findings, and included examinations showing Plaintiff's back and shoulder pain had mostly resolved with treatment while also noting that Plaintiff's mental health was also getting better with consistent treatment. Tr. 29–33.

The ALJ made note of Plaintiff's mental health examinations showing he was appropriately dressed and groomed, had normal speech rate, volume, and inflection, had logical thought processes and was goal oriented, his recent and remote memory were unimpaired, he was focused and appropriately attentive, and his associations were normal and intact. The ALJ also made note of mental health examinations showing Plaintiff had poor judgment and insight, that he was restless and on edge, and that his mood was sometimes guarded and irritable. Tr. 33. Furthermore, the ALJ discussed Plaintiff's low-average level of intellectual functioning, that he lost focus during a several seven's task on examination, that he was able to complete a multiple-step simple task with no errors, and that he had a learning disorder in the areas of reading,

writing, and mathematics. Tr. 32. Plaintiff argues that the ALJ improperly focused on mostly

normal exam findings without acknowledging his poor judgment and insight, depressed or

anxious mood, problems with attention and concentration, and low average intellectual

functioning. Pl. Br. at 14.

The ALJ, however, did not err. Given that the ALJ acknowledges Plaintiff's adverse

mental health findings, what the Plaintiff argues for is a reweighing of the evidence, an exercise

this court cannot undertake. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th

Cir. 2004) (holding that if evidence exists to support more than one rational interpretation, the

court is bound to uphold the ALJ's findings).

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ erred by finding the medical opinions of Barbara Bergeron, FNP,

and Ardath McDermott, LCSW, less than fully persuasive. The Court agrees.

For claims filed on or after March 27, 2017, ALJs are no longer required to give

deference to any medical opinion, including treating source opinions. Rules Regarding the

Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§

404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The

"most important" factors in the evaluation process are supportability and consistency. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered

and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2),

416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the

same issue are both equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ is required to explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot

reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022).

### A.    Barbara Bergeron, FNP

Bergeron provided a medical opinion for the Plaintiff on June 4, 2021. Tr. 1039. In her

opinion, she believed that the Plaintiff would need to lie down or rest every 20 minutes for

approximately half an hour, that he could only walk four blocks, that he could sit for three hours

and stand for four hours in an eight-hour day, that he could sit for 30 minutes at one time, that he

could stand and walk for only 15 minutes at a time, and that he would need a job that allowed an

at will sit, stand, or walk option. Tr. 1037. She also noted that he would need additional

unscheduled breaks four to five times in an eight-hour day for about 20 minutes due to fatigue,

shortness of breath, and pain. Tr. 1038. She opined that Plaintiff could never lift or carry even 10

pounds or less, that he has limitations doing repetitive reaching, handling, or fingering, that he

cannot use his hands to grasp, turn, or twist objects, that he cannot use his fingers for fine

manipulation, and that he cannot use his arms for reaching. Tr. 1038. She further opined that

Plaintiff would need to elevate his legs throughout the day, that he would be off-task 25% or

more throughout the day, and that he would miss more than 4 days per month. Tr. 1038–39.

The ALJ found Bergeron's medical opinion unpersuasive because she had only been treating Plaintiff for three months at the time she submitted her opinion, and because it was inconsistent with medical evidence showing Plaintiff's gait and station were normal. Tr. 34, citing Tr. 1064.

Plaintiff argues the ALJ erred by not adequately analyzing Bergeron's medical opinion for consistency and supportability and that the ALJ's reasoning for rejecting the entirety of Bergeron's medical opinion is unsupported by the evidence. Pl. Br. at 5–8. The Plaintiff is correct.

As noted above, the most important factors that must be explained when examining a medical opinion are its supportability and consistency with the provider's own treatment notes and with the other medical evidence in the record. The ALJ did not provide that here. While a medical provider's length of treatment can be considered, it is of lesser import than the supportability and consistency factors and cannot serve as a reasonable basis for rejecting a medical opinion without more. The ALJ stated that Bergeron's opinion was based on her clinical observations and the Plaintiff's performance on examination, which speaks to its supportability, yet still rejected Bergeron's opinion. When it comes to consistency, the ALJ found Bergeron's sit/stand/walk limitations inconsistent with the other evidence in the record, specifically that records showed Plaintiff's gait and station to be normal. Tr. 34. A normal gait and station does not adequately explain how all of Bergeron's limitations were rejected, specifically the upper extremity limitations, the need for unscheduled breaks, his mental health conditions resulting in him being off-task for 25% or more in an eight-hour day, or his need to rest. Tr. 1036–39.

As such, the ALJ erred by failing to adequately explain the supportability and consistency factors and did not provide adequate reasoning for rejecting Bergeron's medical opinion.

B.      Ardath McDermott, LCSW

McDermott provided a medical source statement on April 2, 2021. Tr. 1031. Her medical

source statement provided no information regarding what Plaintiff could still do despite his

limitations, with McDermott noting that she had no information and was unable to assess his

capabilities. Tr. 1027–30. She did note, however, that she met with Plaintiff a total of four times

for therapy, that he reported a depressed mood, low energy, poor concentration, slow thinking,

poor organization skills, and that he has difficulty following through on tasks. Tr. 1025. She

further noted that he has difficulty being around people and that it was possible his reported

difficulties could affect his ability to work full-time. Tr. 1025.

Plaintiff argues that McDermott's medical opinion was not properly evaluated for its

supportability and consistency. Pl. Br. at 9–11. The Commissioner argues that McDermott's

opinion was not a medical opinion at all because it contained no information regarding what

Plaintiff could still do despite his mental health impairments, and the opinion was too vague to

be useful. Def. Br. at 19–22. The Commissioner is correct.

A medical opinion is a "statement from a medical source about what you can still do

despite your impairment(s) and whether you have one or more impairment-related limitations" as

it pertains to an individual's ability to work. 20 C.F.R. § 416.913(a)(2). McDermott specifically

chose not to provide any assessment of Plaintiff's abilities despite his noted mental health

impairments. Tr. 1025, 1027–30. Furthermore, it is not an error for the ALJ to reject an opinion

because it is vague or lacks specific functional limitations, such as McDermott's statement that

Plaintiff's mental health impairments could "possibly" affect his ability to work. Tr. 1025; *see*

*Samuel P. v. Comm'r of Soc. Sec.*, No. 20-5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6,

2021) ("[A] finding that a medical opinion does not contain specific functional limitations, or is

otherwise too vague to be useful in making a determination, can serve as a valid reason for discounting that opinion (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999)); *Athanas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02292-PHX-MTL, 2021 WL 5578182, at *9 (D. Ariz. Nov. 30, 2021) (finding the ALJ was reasonable in affording a doctor's opinion little weight where the doctor concluded the plaintiff "would require 'some' instructions and that her mental condition presented 'some limitations'").

In sum, the ALJ did not err in discounting McDermott's medical opinion because it was not a medical opinion and, even if it was, it was too vague to be useful.

### III.    Lay Witness Testimony

Plaintiff argues the ALJ erred in rejecting the lay witness statement from Plaintiff's mother. Plaintiff's mother provided a letter on Plaintiff's behalf on September 11, 2021. Tr. 389. She stated that Plaintiff had been in special education classes in school, that he became addicted to drugs at the age of 18, and that he did not have the ability to work or live on his own. Tr. 389. She also stated he could not perform tasks that required common sense, that he has to be reminded to perform personal hygiene and clean his room, that he suffers from PTSD, anxiety, depression, and bipolar disorder, and that she has to drive him to, and remind him of, his medical appointments. Tr. 389.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness,

the ALJ may refer only to those reasons when rejecting similar testimony by a different witness.

*Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

The ALJ acknowledged that Plaintiff's mother submitted lay witness testimony and that it was generally consistent with the Plaintiff's allegations. Tr. 29. While the ALJ did not specifically address how the lay witness testimony was considered, the ALJ did not err in failing to do so because the testimony does not describe any limitations beyond those described by Plaintiff, and the same reasons that were sufficient to discount Plaintiff's testimony—getting better with treatment and inconsistency with the medical records—apply equally to the testimony of this lay witness. *See Molina*, 674 F.3d at 1123. Accordingly, the ALJ did not err.

## IV.   Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits

each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that a remand for further proceedings is the appropriate remedy in this case. As discussed above, the ALJ erred in improperly finding unpersuasive the entirety of Barbara Bergeron's medical opinion, which necessarily results in an incomplete RFC and step five finding. As such, the issue of plaintiff's RFC remains unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made.) Such an error is "not inconsequential to the ultimate nondisability determination." *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

On remand, the ALJ shall reevaluate Barbara Bergeron's medical opinion and either accept the limitations described therein or explain why it is unpersuasive, supported by substantial evidence. As warranted, the ALJ will reevaluate Plaintiff's RFC and obtain supplemental VE evidence if necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

/ / / / / /

/ / / / / /

/ / / / / /

/ / / / / /

/ / / / / /

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED in part and

REVERSED in part.

IT IS SO ORDERED.

DATED:_____April 7, 2024_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge